UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS R. FORD, JR., | ) | CIVIL ACTION NO. 4:20-CV-02120 |
| Plaintiff | ) | |
| | ) | (ARBUCKLE, M.J.) |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.   INTRODUCTION

Plaintiff Thomas R. Ford, Jr., an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 8). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.   BACKGROUND & PROCEDURAL HISTORY

On April 4, 2018, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 12). In this application, Plaintiff alleged he became disabled on November 23, 2016, when he was 56 years old, due to the following conditions: lumbar spinal stenosis, L-4 bulging discs, L5 – S-1 ruptured disc, lumbar radiculopathy, and GI issues. (Admin. Tr. 114). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, and get along with others. (Admin. Tr. 128). Plaintiff graduated from high school in 1979 and participated in the regular education program. (Admin. Tr. 115). Before the onset of his impairments, Plaintiff worked as a billing clerk. (Admin. Tr. 116).

On July 27, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 12). On August 9, 2018, Plaintiff requested an administrative hearing. *Id.*

On September 19, 2019, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Michelle Wolfe (the "ALJ"). (Admin. Tr. 18). On November 14, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. *Id.* On January 11, 2020, Plaintiff requested

review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 7).

On September 25, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 2).

On November 13, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id.* at 3 As relief, Plaintiff requests that the Court remand the decision and award him benefits. *Id.*

On April 8, 2021, the Commissioner filed an Answer. (Doc. 11). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id.* Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 12).

Plaintiff's Brief (Doc. 13) and the Commissioner's Brief (Doc. 16) have been filed. Plaintiff did not file a reply. This matter is now ripe for decision.

### III. STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

#### A.  SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

      **B.**     **STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on November 14, 2019.

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the

basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Having reviewed the applicable legal standards, I now turn to the merits of Plaintiff's claims.

## IV. DISCUSSION

Plaintiff raised the following issue in his statement of errors:

(1) Whether the ALJ erred in determining that appellant could perform his past relevant work and thereby erred in denying his application for disability benefits.

(Doc. 13, p. 4).

### A. THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her November 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2016. (Admin. Tr. 18). Then, Plaintiff's application was evaluated at steps one through four of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between November 23, 2016 (Plaintiff's alleged onset date) and

December 31, 2016 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 14).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment: degenerative disc disease in his lumbar spine. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 14-15).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

> [T]he claimant is limited to standing and walking up to four hours in an eight hour work day. The claimant is limited to occasional balancing, stooping, crouching, kneeling and climbing but can never crawl or climb on ropes or scaffolds. The claimant is limited to frequent exposure to temperature extremes of cold, to wetness, to humidity, to vibrations, and to hazards including moving machinery and unprotected heights.

(Admin. Tr. 15).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in his past relevant work as a billing clerk (as it is generally performed in the national economy). (Admin. Tr. 17). The ALJ did not proceed to step five.

> **B. WHETHER THE ALJ'S CONCLUSION AT STEP FOUR IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

During his administrative hearing, Plaintiff testified as follows about his work as a billing clerk:

> Q    In terms of work that you've done in the past, do you feel as though your back injury or back problems and associated conditions preclude you from doing that kind of work?
>
> A    Yes, I do because I can't sit for a period of time. And I'd have to keep getting up and moving around. And I did try the Omnicare keyboarding. I guess, I just wasn't smart enough to retain it.
>
> Q    I want to ask you about that.
>
> A    Okay.
>
> Q    Since you were hurt, did you attempt to go back to work doing some pharmaceutical billing?
>
> A    Yes. In 2013, I went to Omnicare.
>
> Q    And explain to us what you did in that position.
>
> A    Okay. Omnicare is where they took the people who called in with their insurance to pay for their medications. It's a four-week training period. I didn't do all that well, so they recycled me again. So, there was four of my months. Then, they put me out on the floor. I did okay at the beginning but as they gave me bigger workloads, I kept screwing up more and more. So, the supervisor moved me up beside her. She said she can keep an eye on me. I wasn't allowed to ask my coworkers for help. She said, "you should know this by now." So, --plus she didn't like how frequently I went to the bathroom. I told her I had stomach issues, but she said, "maybe you should have picked a better job choice." So, I quit before I got fired.

(Admin. Tr. 33-34).

During the administrative hearing, the VE testified as follows:

Q      Can you please state the claimant's past work in the last 15 years as actually and generally performed?

A      Yes. . . . the more recent position he held is that of a billing clerk which is sedentary duty, semiskilled, SVP4.

Q      Now, assume an individual who has the same age, education, and work history as the claimant. And has the residual functional capacity to perform work at the light exertional level as defined by the regulations but subject to the following. The individual would have occasional balancing, stooping, crouching, crawling, kneeling, and climbing but never on ladders, ropes, or scaffolds. The individual would need to have limited to frequent temperature extremes of cold, wetness and humidity, vibrations, and hazards including moving machinery and unprotected heights. Would the individual be able to perform any of the past work as actually performed and generally performed?

A      The billing clerk position according to the DOT. According to his testimony, he needed accommodations. So not as performed.

Q      And if the individual required only four hours of standing and walking throughout the workday. Would that have any effect on the billing clerk as generally performed?

A      It would not have an effect as according to the DOT.

Q      And if the individual further required no crawling, would that have further effect on that position?

A      The position could be performed according to the DOT.

(Admin. Tr. 34-35).

At step four of the sequential evaluation process, the ALJ concluded that Plaintiff could perform his past relevant work as a billing clerk as it is generally performed in the national economy. In doing so, the ALJ explained:

> The claimant worked as a billing clerk of Omnicare LLC from February 2013 to September 2013 (Exhibits 9D and 5E). The vocational expert testified that this position is generally performed as a sedentary duty semiskilled job with a specific vocational profile (SVP) of four. The claimant did perform this job within the relevant past 15-year period. He did this job long enough to achieve average performance, based on the above SVP level. He had earnings in excess of presumptive-substantial gainful activity amounts for this job. Therefore, as required by SSR 82-62, the undersigned findings that the claimant's work as a billing clerk satisfies all three of the necessary requirements (recency, duration, and earnings), and does constitute past relevant work.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform billing clerk as generally performed. The residual functional capacity allows for the performance of past relevant work, based on the testimony of the vocational expert, who testified that a hypothetical individual with the above limitations would be capable of performing this job. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT).

(Admin. Tr. 17-18).

Plaintiff argues:

> In the instant matter, the uncontroverted evidence from the Appellant established that he was only able to perform the billing clerk with Omnicare with accommodations. The vocational expert examined by the ALJ even acknowledged that Appellant was only able to perform the billing clerk job with accommodations. The vocational expert testified that the Appellant would not be able to perform the billing

clerk position as past relevant work because Appellant needed accommodations in order to do that work. (RR at 35).

In determining that the Appellant could perform his past relevant work, the ALJ neither rejected the Appellant's testimony regarding the manner in which he performed the work nor cited evidence that contradicted Appellant's description of the manner in which he performed the billing clerk position. In her Decision, the ALJ failed to acknowledge or account for Appellant's needs for accommodations in performing the billing clerk work that she determined the Appellant could perform. Further in determining that the Appellant could perform his past relevant work, the ALJ failed to credit the Appellant's testimony as the required primary source for vocational documentation. Nowhere in her Decision did the ALJ indicate that the Appellant's testimony was not credible.

In the instant matter, the ALJ was presented with uncontroverted evidence from the Appellant about the nature of his past relevant work. She was not presented with nor did the ALJ cite any contradictory evidence. The ALJ's determination that Appellant could perform his past relevant work was not supported by substantial evidence in the record as her assessment was different from the Appellant's uncontradicted and uncontroverted testimony about his past relevant work. This determination is clear error and requires reversal. *See Brewster*, *supra*, *see also Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981).

(Doc. 7-8).

In response, the Commissioner argues:

Here, after assessing Plaintiff's RFC, the ALJ proceed to step four and found that Plaintiff could perform his past work as generally performed in the national economy (Tr. 17-18). The ALJ explained the demands of Plaintiff's past work as a Billing Clerk—identifying the DOT number as well as exertional level and skill involved (Tr. 17-18). As the ALJ noted, the vocational expert testified that this position as "generally performed" is a sedentary duty semiskilled job with a specific vocational profile of four (Tr. 17, 34). Plaintiff testified that he performed this job within the relevant past 15 year period (Tr. 17, 33),

long enough to achieve average performance with earnings in excess of presumptive-substantial gainful activity amounts for the job (Tr. 17). As the ALJ correctly pointed out, Plaintiff's work as a Billing Clerk satisfied the necessary recency, duration, and earnings requirement of past relevant work required by SSR 82-62 (Tr. 17).

The ALJ then compared Plaintiff's RFC "with the physical and mental demands of this work" and found that Plaintiff retained the RFC to perform the work as generally performed (Tr. 18). In support of this, the ALJ further noted that he obtained and relied upon the testimony of an impartial vocational expert, Josephine Doherty, who has significant experience conducting vocational assessments and serving as a vocational expert (Tr. 18, 34-36, 149-51). As the ALJ explained, VE Doherty testified that a hypothetical individual with Plaintiff's RFC could perform the billing clerk job as generally performed (Tr. 18, 34-36). Plaintiff's counsel did not object to Ms. Doherty's qualification (Tr. 34).

As the forgoing discussion illustrates, the ALJ complied with the controlling agency rulings and regulations in determining that Plaintiff could perform his past relevant work as generally performed, despite his limitations during the one-month relevant period, and substantial evidence supports this step four finding. The ALJ compared Plaintiff's RFC with the requirements of the job as outlined in the DOT; he secured the testimony of a vocational expert who likewise categorized that work under the DOT and testified that an individual with Plaintiff's RFC would not be precluded from that work as generally performed; and he relied on the undisputed vocational expert testimony in concluding that Plaintiff could perform his past relevant work as generally performed. It is thus irrelevant in this case whether Plaintiff can handle the demands of his past relevant work as actually performed. *See Flora v. Berryhill*, 1:16-CV-00252, 2017 WL 2791054, at *9-10 (M.D. Pa. May 1, 2017), adopted by 2017 WL 2778559 ("[T]he ALJ's assessment that [the vocational expert's] testimony was 'credible' is reasonably construed as findings of fact regarding the demands of [plaintiff's] past relevant work, and [plaintiff's] ability to engage in such work."); *Salas-Perez v. Colvin*, 3:14-CV-2357, 2016 WL 3583815, at *10 (M.D. Pa. June 30, 2016) (same).

> Plaintiff failed to meet his burden to prove "that []he is unable to return to h[is] past relevant work either as []he performed that work or as that work is generally performed in the national economy." *Bowen*, 482 U.S. at 146 n. 5. Accordingly, the ALJ properly ended the disability inquiry at step four and found Plaintiff not disabled.

(Doc. 16, pp. 10-13).[3]

Section 404.1520(f) of Title 20 of the Code of Federal Regulations provides that:

> You impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work. . . . If you can still do this kind of work, we will find that you are not disabled.

Social Security Ruling 82-61 clarifies how an ALJ determines whether a claimant can perform his or her past relevant work. This ruling discusses three possible "tests" for determining whether or not a claimant retains the capacity to perform his or her past relevant work. It explains:

> Three possible tests for determining whether or not a claimant retains the capacity to perform his or her past relevant work are as follows:

---

[3] Contrary to the Commissioner's brief, neither the ALJ nor the VE provided a specific DOT number for Plaintiff's past relevant work. The DOT number for the occupation of Billing Clerk (a sedentary occupation with an SVP of 4) is 214.362-042. DOT #214.362-042, 1991 WL 671876. Plaintiff does not raise the issue of whether the failure to provide a specific number requires remand. At least one other court has found that it does not. *See Meritt v. Astrue*, 872 F.Supp.2d 742, 756 n. 1 (N.D. Ill. 2012) (finding that citation to a DOT number is not required).

1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.

Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable.

While "delivery jobs," or "packaging jobs," etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge.

2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be "not disabled."

3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion that the DOT description.

A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, **if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."**

1982 WL 31387 at *1-2 (boldface emphasis added).

Here, Plaintiff argues that the ALJ's step four determination under the second "test" is not supported by the record. However, the ALJ did not rely on the second test and did not conclude that Plaintiff could perform his past relevant work as *actually* performed.

In response, the Commissioner argues that the ALJ's determination under the third test that Plaintiff could do work as a billing clerk as *generally* performed in the national economy is supported by substantial evidence. I agree with the Commissioner. Substantial evidence supports the ALJ's determination that an individual with the RFC assessment assessed by the ALJ can perform the position of Billing Clerk as it is generally performed. Pursuant to the Dictionary of Occupational Titles, a Billing Clerk is a sedentary job (i.e. requiring approximately two hours of standing per eight hour workday), no balancing, stooping, crouching, kneeling, climbing or crawling, and no exposure to temperature extremes, cold, wetness, humidity, vibrations, moving machinery or unprotected heights. *See* DOT #214.362-042, 1991 WL 671876.

Accordingly, I find that the ALJ's conclusion at step four that Plaintiff can perform his past relevant work as it is generally performed in supported by substantial evidence. This finding mandates affirmance.

## V. CONCLUSION

Accordingly, Plaintiff's request for the award of benefits, or in the alternative a new administrative hearing is DENIED AS FOLLOWS:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment will be issued in favor of the Commissioner of the Social Security Administration by separate order.

(3) An appropriate Order will be issued.

Date: March 2, 2022                                    BY THE COURT

<u>s/William I. Arbuckle</u><br>
William I. Arbuckle<br>
U.S. Magistrate Judge